Law Office of G. Anthony Long
P. O. Box 504970, Beach Road
San Jose, Saipan, MP 96950
Telephone No. (670) 235-4802
Facsimile No. (670) 235-4801

Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| CYNTHIA ATTAO | ) CIVIL ACTION NO 08- 0018 |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) **MEMORANDUM SUPPORTING** |
| TINIAN SHIPPING and | ) **MOTION TO DISMISS** |
| TRANSPORTATION INC. | ) |
| | ) |
| Defendant | ) Date: May 22, 2008 |
| | ) |
| _____ | ) Time: 9:00 a.m. |

## I.    STANDARD FOR A FRCP RULE 12(b)(6) MOTION TO DISMISS

A motion to dismiss under FRCP Rule 12(b)(6)  tests the legal sufficiency of the claims

asserted in the complaint. *Bureerong v. Uvawas*, 922 F.Supp. 1450, 1462  (C.D.Cal. 1996).   A

Rule 12(b)(6) dismissal is proper only where there is a "lack of a cognizable legal theory"

*Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir.1988) or where it appears

beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle

plaintiff to relief. *Yamaguchi v. Department of the Air Force*, 109 F.3d 1475, 1480 (9th

Cir.1997); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). In

ruling on a Rule 12 (b)(6) motion, all allegations of material fact in the complaint are taken as

true and construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336, 337-38 (9th Cir.1996). However, the court should not accept conclusory legal allegations "cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged" in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994).

## II.    THE FIRST CLAIM FOR RELIEF FAILS TO ALLEGE A CLAIM FOR VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

The first claim for relief alleges Tinian Shipping violated 42 U.S.C. § 1282. To this extent, § 12182 prohibits discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of **public accommodation** by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a)(emphasis added). The essential elements of a ADA claim under§ 12182 are that (1) plaintiff is disabled as that term is defined by the ADA; (2) defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) plaintiff was denied full and equal treatment because of her disability. *Parr v. L & L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1085 (D.Haw.2000). Dismissal is appropriate in this case as (1) the ferry is not a public accommodation for ADA purposes and (2)  the complaint in this case fails to allege that plaintiff was denied access on the basis of her disability.

## A.    THE FIRST CLAIM FOR RELIEF FAILS TO STATE AN ADA VIOLATION AS IT DOES NOT ALLEGE ANY FACTS SHOWING AN EFFECT ON COMMERCE

42 U.S.C. section 12182 provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a) (West 2001) (emphasis added).The ADA defines a public accommodation as including a private entity whose operations affect commerce and fall within certain categories. 42 U.S.C. § 12181(7); *Harris v. Oregon Health Sciences University*, 1999 WL 778584, (D.Or., 1999); *Torres v. AT & T Broadband, LLC*, 158 F.Supp.2d 1035, 1038 (N.D.Cal.,2001); For purposes of the ADA, "commerce" is defined as travel, trade, traffic, commerce, transportation, or communication:

(A) **among** the several States;

(B) **between** any foreign country or any territory or possession and any State; or

(C) **between** points in the same State but through another State or foreign country.

42 U.S.C. § 12181(1). If the operations of a private entity do not affect commerce then it is not a public accommodation. *See Tater-Alexander v. Amerjan*, 2008 WL 961233 at 6 (E.D.Cal.,2008)[Complaint fails to state a claim when it does not alleged any facts demonstrating that defendant's operations affected commerce].

Here, plaintiff contends the ferry operates between Tinian and Saipan which are two points within the Commonwealth. As such, the complaint does not allege any travel, trade,

traffic, commerce, transportation, or communication (a) among the states, (b) between any

foreign country or any territory or possession and any State or that the ferry or ( c) between points

in the same State but through another State or foreign country. This is cause of dismissal. *See*

*Tater-Alexander* 2008 WL 961233 at 6 [Complaint fails to state a claim when it does not alleged

any facts demonstrating that defendant's operations affected commerce].


**B.**    **THE FIRST CLAIM FOR RELIEF ALLEGES DISCRIMINATION ON THE BASIS OF RACE AND NOT DISABILITY**

The complaint alleges that plaintiff was advised that Chinese had priority on boarding hte

ferry and that she could not board the ferry until the Chinese had all boarded. See Complaint at

¶¶ 15, 16, 17, and 18.  Thus, it appears that plaintiff is not alleging that she was denied boarding

the ferry at all, but that Chinese were given boarding priority. Complaint at ¶ 22. Alleging

discrimination on the basis that Chinese were given boarding priority is a claim for

discrimination based on race and not disability. Indeed, based on the allegation, if plaintiff were

Chinese, then she would have had priority in boarding. Since the claim is premised on alleged

unequal treatment on the basis of race, it fails to state a claim under the ADA.


**III.**    **THE FOURTH CLAIM FOR RELIEF FAILS TO STATE A VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 AS IT DOES NOT ALLEGE ANY FACTS SHOWING AN EFFECT ON COMMERCE**

The fourth claim for relief alleges a violation of public accommodation under the  Civil

Rights Act of 1964 ("CRA 1964"). The CRA of 1964  provides that "[a]ll persons shall be

entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). The test for whether a private entity is a "public accommodation" for purposes of the CRA of 1964 is the same as that under the ADA. See  42 U.S.C. § 2000a(b) and ( c).  Thus, for the same reason the ferry is not a public accommodation for ADA purposes, it is not a public accommodation for purposes of the CRA of 1964.

The test for whether a private entity is a "public accommodation" for purposes of the CRA of 1964 is the same as that under the ADA. See  42 U.S.C. § 2000a(b) and ( c).  Thus, for the same reason the ferry is not a public accommodation for ADA purposes, it is not a public accommodation for purposes of the CRA of 1964.

## IV.   DISMISSAL OF THE FIRST AND FOURTH CLAIMS FOR RELIEF IS  PROPER AS THE COMMERCE CLAUSE DOES NOT APPLY IN THE COMMONWEALTH

To establish a ADA and CRA of 1964 violation, therefore, plaintiff must show an effect of commerce which implies the commerce clause. This subjects both claims to dismissal as the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States ("Covenant") does not extend the commerce clause to the Commonwealth.

### A.   THE UNITED STATES DOES NOT POSSESS PLENARY AUTHORITY OVER THE COMMONWEALTH

The United States' authority over the Commonwealth is not absolute. *Sagana v. Tenorio*,  384 F.3d 731, 734 (9th Cir. 2004). The source and scope of federal authority over the Commonwealth

arises solely under the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States ("Covenant"). *United States ex. rel. Richards v. Guerrero*, 4 F.3d 749 (9th Cir. 1993). *See Northern Mariana Islands v. United States*, 399 F.3d 1057, 1062 - 1063(9th Cir. 2005)[ "We do not dispute that 'the authority of the Unoted States towards the CNMI arises solely under the Covenant.'"]; *Sagana v. Tenorio*, 384 F.3d 731, 734 (9th Cir. 2004) [The United States' authority over the CNMI is not absolute as it is limited by the Covenant]. *Richards* further notes that "[t]he Covenant has created a 'unique' relationship between the United States and the CNMI, and its provisions alone define the boundaries of those relations." 4 F.3d at 754. *See Hillblom v. United States*, 896 F.2d 426, 429 (9th Cir. 1990).

An examination of the applicability of the commerce cause in light of the Covenant reveals that an effect on commerce cannot be established as a mater of law.

## B. THE COVENANT DOES NOT EXTEND THE COMMERCE CLAUSE TO THE COMMONWEALTH

### 1. COVENANT § 501 DOES NOT INCLUDE THE COMMERCE CLAUSE OR THE TERRITORIAL CLAUSE AMONG THE CONSTITUTIONAL PROVISIONS EXTENDED TO THE COMMONWEALTH

Covenant § 501(a) extends certain, but not all, United States Constitutional provisions to the NMI. *Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1439 (9th Cir. 1997); *Hillblom*, 896 F.2d at 428. Section 501(a) is deemed to be a fundamental provision of the Covenant. *Commonwealth of Northern Mariana Islands v. Atalig*, 723 F.2d 682, 683 n. 9 (9th Cir. 1984). The commerce clause is one of the constitutional provisions not extended to the Commonwealth pursuant to Covenant § 501. *Magna*, 107 F.3d at 1439. The 9th Circuit has not

squarely addressed the applicability of the commerce clause to the Commonwealth or the

implication of Covenant § 501 not extending the commerce clause to the Commonwealth. *See*

*Hillblom, supra.* However, the 9th Circuit's reasoning and analysis in *Fleming v. Department of*

*Public Safety, Commonwealth of Northern Mariana Islands*, 837 F.2d 401(9th Cir. 1988)

overruled on other grounds, *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir.1992) is binding

precedence for addressing the issue. *See Hart v. Massanari*, 266 F.3d 1155(9th Cir.

2001)[Decision of a panel is binding Circuit precedence unless overruled by the Supreme Court

or an en banc panel or superseded by legislative enactment

      *Fleming* concerned the applicability of the 11th amendment and whether the NMI

possessed 11th amendment immunity. In noting that the Covenant did not extend the 11th

Amendment to the Commonwealth, *Fleming* noted that the specificity of the Covenant

establishes that the Covenant's declining to extend the 11th Amendment to the Commonwealth

"unequivocally demonstrates" that the 11th Amendment immunity did not apply to the

Commonwealth. *Id* at 405. It was then noted that neither the United States nor the

Commonwealth had approved any law, compact, or treaty that would have the effect of making

the 11th amendment applicable to the Commonwealth. *Id. Fleming* then held that:

> [w]here the language of the Covenant is as clear as it is here, and the
> legislative history and purpose are not to the contrary, **we may not impose**
> eleventh amendment immunity on the Commonwealth.

*Id* at 405 - 406 (emphasis added). This same logic and rationale applies equally with respect to

the commerce clause since the Covenant did not extend that constitutional provision to the

Commonwealth. *Magna*, 107 F.3d at 1439.

2.      **THE COMMERCE CLAUSE CANNOT BE DEEMED APPLICABLE PURSUANT TO COVENANT § 502**

Given the inapplicability of the commerce clause under § 501, the only possible basis for existence for application of the commerce clause rests with Covenant § 502. Covenant §§ 502(a)(1), 502(a)(3) and 502(b) are not applicable on their face. This leaves Covenant § 502(a)(2)'s two prong test as the only possible provision under which the commerce clause can be found to apply. According to Covenant § 502 (a)(2), laws applicable to Guam and which are of general application to the several States apply in the Commonwealth as they are applicable to the several states.

*Fleming* addressed the application of 11th Amendment Immunity to the CNMI in the context of a 42 U.S.C. § 1983 claim. In noting that Covenant § 501(a) did not extend 11th Amendment immunity to the Commonwealth, it concluded that Covenant § 502(a)(2) did not provide a "back door" for extension of constitutional provisions. 837 F.3d at 406. *Fleming* reasoned that:

> [a] plain reading of the Covenant indicates a separation between constitutional and nonconstitutional provisions. We simply cannot subvert the well defined parameters of sections 501(a) and 502(a)(2) absent clear legislative intent. Were we to incorporate the eleventh amendment through section 502(a)(2), we would reduce that amendment to a mere "law" generally applicable to the states, as opposed to a constitutional provision.

*Id*. The same analysis applies in this case. The commerce clause was not extended to the Commonwealth and the Covenant does not otherwise give the United States jurisdiction over intra-CNMI commerce or commerce between the CNMI and any place outside thereof. Covenant § 502(a)(2) cannot, therefore, serve as the vehicle for imposing federal criminal liability premised on

the commerce clause.

Since the commerce clause is not specifically extended to the Commonwealth by Covenant § 501, *Fleming* precludes reliance on Covenant § 502(a)(2) for imposing the constitutional provision upon the Commonwealth. 837 F.2d at 406.   See *Hart* 266 F.3d at 1170.

*Fleming* clearly holds that Covenant § 502(a)(2) cannot subvert the well defined parameters of  §  501(a) absent **clear legislative intent**. 837 F.2d at 406. There is not any clear legislative authority showing congressional intent that the commerce clause applies in the Commonwealth or that Covenant § 502(a) incorporates the commerce clause. Moreover, the 9th Circuit relies on the Section By Section Analysis of the Covenant to Establish a Commonwealth of the Northern Mariana Islands, (February 15, 1975) ("Analysis") to assist in discerning the meaning of the Covenant. *Northern Mariana Islands,*  399 F.3d at 1065. The Analysis does not mention or address the commerce clause or its applicability to the Commonwealth. This circumstance supports *Fleming's* application of the plain language rule which means the commerce clause  does not apply in the Commonwealth and it can not be "back doored" or otherwise circumvented by Covenant § 502(a)(2). Thus, under analysis required by binding Circuit authority, the commerce clause, like the 11th Amendment, does not apply in the Commonwealth.[1]

Accordingly, when a particular activity is beyond the reach of the commerce clause and a federal criminal statute aimed at the activity expressly incorporates the commerce clause as a jurisdictional element, then federal courts lack criminal jurisdiction over such activity. *See McCoy,* 323 F.3d at 1124 - 1130 (9th Cir. 2003)[Statute's commerce clause "jurisdictional hook" is "useless"

---

[1]

This conclusion is not extraordinary in light of  *Sakamoto v. Duty Free Shoppers*, 764 F.2d 1285(9th Cir. 1985) cert. denied, 475 U.S. 1081, 106 S.Ct. 1457, 89 L.Ed.2d 715 (1986).

and it "provides no support for the government's assertion of federal jurisdiction" as the alleged

activity does not fall within reach of the commerce clause]. This is precisely the circumstance in this

case. Federal jurisdiction is lacking with respect to 18 U.S.C. §§ 1589 and 1590. This negates the

civil remedy provided by 18 U.S.C. §§ 1595.


## C.    LEGISLATIVE HISTORY DOES NOT SUPPORT EXTENSION OF THE COMMERCE CLAUSE TO THE COMMONWEALTH

Pursuant to *Fleming*, "[w]here the language of the Covenant is clear" and "the legislative

history and purpose are not to the contrary" this Court may not impose a constitutional provision on

the Commonwealth when that particular provision was not extended to the Commonwealth in the

Covenant. *837 F.2d at 405 -406*. This is not an anomaly. For instance, *Atalig* upheld the exclusion

of the Sixth Amendment jury trial right to the Commonwealth. 723 F.2d at 688 - 691. Similarly,

*Wabol* held the 14th amendment's equal protection clause did not supersede or defeat the

Commonwealth's racial land alienation restriction. 958 F.2d at 1458 - 1463.

The language of the Covenant does not extend the commerce clause to the Commonwealth.

*Magana,* 107 F.3d at 1438[Noteworthy that the commerce clause, territorial clause and supremacy

clause are omitted from Covenant § 501.] The legislative history and purpose is not contrary to the

Covenant's language.

The Marianas Political Status Commission's Section-by-Section Analysis of the Covenant

to Establish A Commonwealth of the Northern Mariana Islands in Political Union with the United

States of America (1975)("MPSC Analysis") is the authoritative source for discerning the meaning

of the Covenant. *Northern Mariana Islands* 399 F.3d at 1065; *Fleming*, 837 F.2d at 408. This

Court has also recognized the Section by Section Analysis from the Senate Committee on Interior and Insular Affairs Report on the Covenant to Establish a Commonwealth of the Northern Mariana Islands (1975), S.Rep. No. 94-433, 94th Cong., 1st Sess. 65, 66 (1975), U.S.Code Cong. & Admin.News 1976, p. 448, as being "authoritative."*A & E Pacific Const. Co. v. Saipan Stevedore Co., Inc.*, 888 F.2d 68, 71 n.4 (9th Cir. 1989). Neither of these "authoritative" sources discusses or mentions the commerce clause. Thus, the legislative history is not contrary to Covenant § 501 not extending the commerce clause to the Commonwealth. See *Fleming*, 837 F.2d at415 - 406.


**D.    THE COMMERCE CLAUSE DOES NOT APPLY IN THE COMMONWEALTH BY ITS OWN FORCE**

Covenant § 501(a) provides that constitutional provisions or amendments not expressly extended to the Commonwealth and "which do not apply of their own force" will be applicable only with the approval of the Commonwealth and the United States. Constitutional provisions or amendments which apply on "their own force" are limited to those provisions or amendments which concern fundamental rights. *See Wabol*, 958 F.2d at 1459 - 1462; *Atalig*, 723 F.2d at 688 - 690. "Fundamental rights" mean the "fundamental limitations in favor of personal rights' which are 'the basis of all free government." *Atalig*, 723 F.2d at 688 - 690 quoting *Dorr v. United States*, 195 U.S. 138, 146 - 147, 24 S.Ct. 808, 811 - 812 49 L.Ed. 128 (1904). The commerce clause does not affect basic personal rights and is not "the basis for all free government." It cannot, therefore, be construed as a fundamental right which applies in the Commonwealth by its own force. This is consistent with circuit authority holding that the 6th Amendment jury trial right is not a "fundamental right" for purposes of the Covenant. *Atalig*, 723 F.2d at 688 - 690. Similarly, it is compatible with this Court

holding that the Commonwealth's racial land alienation restriction does not violate a "fundamental right." *Wabol*, 958 F.2d at 1459 - 1462. Since the commerce clause is not a "fundamental right", it does not extend to the Commonwealth by its "own force."

**E.    THE TERRITORIAL CLAUSE IS NOT A SOURCE FOR EXTENDING THE COMMERCE CLAUSE TO THE COMMONWEALTH**

Article IV § 3, clause 2 of the United States Constitution known as the "Territorial Clause" vests Congress with plenary power and authority over all territories of the United States. *United States v. Husband R. (Roach)*, 453 F.2d 1054, 1058 - 1059 (5th Cir. 1971). It has been recognized that Congress' Commerce Clause powers "are implicit" in the territorial clause. *Polychrome International Corporation v. Krigger*, 5 F.3d 1522, 1534 (3rd Cir. 1993). However, the territorial clause cannot be utilized to "back door" extension of the commerce clause or the commerce clause principles to the Commonwealth.

Covenant § 501 does not extend application of the territorial clause to the Commonwealth. *Magana*, 107 F.3d 1436, 1439 (9th Cir. 1997); *Hillblom*, 896 F.2d at 428. *See Fleming*, 837 F.2d at 404-405[42 U.S.C. § 1983 applies in the Commonwealth pursuant to Covenant § 502(a)(2) and not the territory provisions of the statue]. Moreover, in *Richards* this Circuit noted that in light of the "unique" relationship between the Commonwealth and the Untied States created by the Covenant " we find unpersuasive the Inspector General's reliance on the Territorial Clause ..." 4 F.3d at 754. In other words, it is the Covenant, and not the territorial clause which determines the United States authority over the Commonwealth. *Id*

In any event, Covenant § 501(a) is a fundamental provision of the Covenant. *Richards*, 4 F.3d at 754; Covenant § 105. The commerce clause is not extended to the Commonwealth pursuant to Covenant § 501. *Magana*, 107 F.3d at 1438; *Hillblom*, 896 F.2d at 429. Consequently, the commerce

clause cannot apply by virtue of the territorial clause as the Commonwealth's consent is necessary for its application. *Richards*, 4 F.3d at 754.  As noted in the authoritative source of the MPSC Analysis :

> [i]t should be noted that mutual consent provisions prevent not only an attempt by one side to change the language of the Covenant, but also prevent any action or law which would be contrary to a fundamental provision of the Covenant. Thus, any attempt by the United States or the Northern Marianas to circumvent the fundamental aspects of the Covenant would be void and of no effect.

MPSC Analysis at 19.

The Covenant came into force through Congress' Joint Resolution on  March 24, 1976. *Sagana*, 384 F.3d at 734; *Saipan Stevedore Co.* 133 F.3d at 720 n.7; *Richards,* 4 F.3d at 751. The legislative history of the joint resolution reveals  concern that:

> [t]he Covenant would bind the Congress to refrain from exercising its authority without the consent of the Mariana Islands in certain enumerated areas which would otherwise be under Congressional authority through Article IV Section 3, Clause 2 of the United States Constitution

Senate Report No. 94-596 at 24,  1976 U.S.C.C.A.N. 448, 471[2]. *See Hillblom*, 896 F.2d at 429 n.1 [Despite the concerns of the Task Force, the territorial clause is not included in the list of constitutional provisions made applicable to the Commonwealth].


## II.    ASSUMING THE COMMERCE CLAUSE APPLIES IN THE COMMONWEALTH THEN DISMISSAL OF THE ADA CLAIM IS NECESSARY AS IT DOES NOT APPLY TO THE COMMONWEALTH PURSUANT TO COVENANT § 105

Covenant § 105 determines the applicability to the Commonwealth of federal statutes enacted after  January 9, 1978 . *Richards*, 4 F.3d at 756. The ADA legislation was enacted after January 9, 1978 thereby meaning the statute's applicability is governed by Covenant § 105. *Richards*, 4 F.3d at 756.

---

[2]A copy of the portion of the report containing this concern is attached hereto as Appendix 1. Article IV Section 3, Clause 2 is the territorial clause

While Covenant § 105 allows the United States to enact laws applicable to the Commonwealth, such authority is constrained or limited by the "fundamental provisions of this Covenant, namely Articles I, II and III and Sections 501 and 805" which guarantee the Commonwealth the right of self government." *Richards*, 4 F.3d at 753 - 754; *A & E Pacific v. Saipan Stevedore*, 888 F.2d 68, 70 - 71 (9th Cir.1989). The 9th Circuit recognizes that tension exists between congressional legislative authority and § 105 's guarantee that the Commonwealth will have local self government. *Richards*, 4 F.3d at 752 - 754. *See A & E Pacific* 888 F.2d at 71. In addressing this tension, *Richards* adopts a balancing of interest test to determine the applicability to the Commonwealth of federal laws enacted after January 9, 1978. *Richards*, 4 F.3d at 754 - 755. This balancing requires consideration of the federal interest to be served by the legislation at issue against the degree of intrusion into the Commonwealth's internal affairs. *Id.* While *Richards* found an identifiable federal interest, it does not explicitly articulate the level of federal interest that must be shown in order for the legislation to satisfy § 105. 4 F.3d at 755. The law suggests that the federal interest must be compelling.

A compelling interest must be shown for laws or governmental conduct which implicate a fundamental right. *See Shapiro v. Thompson*, 394 U.S. 618, 627-35, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1 (1993), *United States v. Playboy Entertainment Group*, 529 U.S. 803, 813 and 817, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). The Commonwealth is not entitled to any lesser degree of protection from federal legislative authority which infringes, overrides or alters a fundamental provision of the Covenant or the Commonwealth's right to self government. *Richards* supports this position as it found, the federal government had a substantial interest in the legislation which justified its application to the Commonwealth. 4 F.3d at 755. Such a substantial interest does not exist regarding the civil remedy provision of the TVPA.

Page 14 of  15

The ADA provides a federal civil remedy for local acts which affect commerce. Given that plaintiff's claims can be addressed through Commonwealth law, a substantial federal interest cannot be shown with respect to the ADA.

## CONCLUSION

For the above reasons, the first and fourth claims for relief should be dismissed

Law Office of G. Anthony Long

By:_____/s/_____
G. Anthony Long